KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
ERIN E. MEYER - # 274244
emeyer@keker.com
JACQUIE P. ANDREANO - # 338354
jandreano@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
COINBASE GLOBAL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ADAM ALFIA, individually and on behalf of other persons similarly situated,<br><br>        Plaintiff,<br><br>      v.<br><br>COINBASE GLOBAL, INC.; and DOES 1 through 50,<br><br>        Defendants. | Case No. 4:21-cv-08689-HSG<br><br>**DEFENDANT COINBASE GLOBAL, INC.'S MOTION TO COMPEL ARBITRATION AND TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      April 28, 2022<br>Time:     2:00 p.m.<br>Dept.:    Courtroom 2, 4th Floor<br>Judge:   Hon. Haywood S. Gilliam, Jr.<br><br>Date Filed: November 8, 2021<br><br>Trial Date:  None Set |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED ......................................................2

III.    FACTUAL BACKGROUND ..................................................................................2

IV.     LEGAL STANDARD..............................................................................................5

V.      ARGUMENT...........................................................................................................7

        A.      Mr. Alfia and Coinbase consented to final and binding individual
                arbitration by agreeing to the 2019 User Agreement..................................7

        B.      The 2019 User Agreement clearly and unmistakably delegates
                determination of "gateway" arbitration questions to the arbitrator. ......10

        C.      The 2019 User Agreement is valid, enforceable, and encompasses Mr.
                Alfia's claims. .........................................................................................11

                1.      The 2019 User Agreement is presumptively valid and enforceable. .........12

                2.      Mr. Alfia's claims fall within the scope of the arbitration clause.............12

        D.      Even if the operative agreement were the 2017 User Agreement, Mr. Alfia
                would still be required to arbitrate his claims. .......................................15

        E.      The action should be stayed pending the completion of Mr. Alfia's
                individual arbitration proceedings. .........................................................17

VI.     CONCLUSION.......................................................................................................17

1

2

# **TABLE OF AUTHORITIES**

3
**Page(s)**

4

**Federal Cases**

5
*AT&T Mobility LLC v. Concepcion*,
 563 U.S. 333 (2011)..........................................................................................12

6

7
*AT&T Techs., Inc. v. Commc'n Workers of Am.*,
 475 U.S. 643 (1986)............................................................................................7

8
*Berk v. Coinbase*,

9
 840 F. App'x 914 (9th Cir. 2020) ................................................................8, 16

10
*Brennan v. Opus Bank*,
 796 F.3d 1125 (9th Cir. 2015) ..................................................................7, 10, 11

11

12
*Britt v. ContextLogic, Inc.*,
 No. 3:20-cv-04333-WHA, 2021 WL 1338553 (N.D. Cal. Apr. 9, 2021)...............................10

13
*BrowserCam, Inc. v. Gomez, Inc.*,

14
 No. 08-cv-02959-WHA, 2009 WL 210513 (N.D. Cal. Jan. 27, 2009)....................................17

15
*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
 207 F.3d 1126 (9th Cir. 2000) ...................................................................6, 7

16

17
*Circuit City Stores, Inc. v. Adams*,
 279 F.3d 889 (9th Cir. 2002) ......................................................................7

18
*Citizens Bank v. Alafabco, Inc.*,

19
 539 U.S. 52 (2003) (per curiam)......................................................................6

20
*Cordas v. Uber Techs., Inc.*,
 228 F. Supp. 3d 985 (N.D. Cal. 2017) .................................................................7

21

22
*DeVries v. Experian Information Solutions, Inc.*,
 No. 16-cv-02953-WHO, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ....................................9

23
*Epic Sys., Corp. v. Lewis*,

24
 138 S. Ct. 1612 (2018)..............................................................................12

25
*Fridman v. Uber Techs., Inc.*,
 No. 18-cv-02815-HSG, 2019 WL 1385887 (N.D. Cal. Mar. 27, 2019) ..................................10

26
*Gerlach v. Tickmark Inc.*,

27
 No. 4:21-cv-02768-YGR, 2021 WL 3191692 (N.D. Cal. July 28, 2021) ..............................11

28

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991)..................................................................................................6, 12

*Green Tree Fin. Corp. v. Randolph*,
   531 U.S. 79 (2000)..........................................................................................................12

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
   139 S. Ct. 524 (2019)......................................................................................................10

*Holl v. United Parcel Service, Inc.*,
   No. 16-cv-05856-HSG, 2017 WL 11520143 (N.D. Cal. Sept. 18, 2017)...............................17

*In re Anthem, Inc. Data Breach Litigation*,
   No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ...............................15

*In re Facebook Biometric Information Privacy Litigation*
   185 F. Supp. 3d 1155 (N.D. Cal. 2016) ...............................................................................9

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*,
   863 F.2d 315 (4th Cir. 1988) ...............................................................................................9

*Larson v. Speetjens*,
   No. 05-cv-3176-SBA, 2006 WL 2567873 (N.D. Cal. Sept. 5, 2006), *order
   clarified*, 2006 WL 3365589 (N.D. Cal. Nov. 17, 2006).........................................................10

*Levin v. Caviar, Inc.*,
   146 F. Supp. 3d 1146 (N.D. Cal. 2015) ................................................................................8

*Marselian v. Wells Fargo & Co.*,
   514 F. Supp. 3d 1166 (N.D. Cal. 2021) ................................................................................9

*Matera v. Google Inc.*,
   No. 15-cv-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) .................................9

*McLellan v. Fitbit, Inc.*,
   No. 3:16-cv-00036-JD, 2018 WL 1913832 (N.D. Cal. Jan. 24, 2018)....................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)............................................................................................................12

*Neurosigma, Inc. v. De Salles*,
   No. 13-cv-07973-DMG, 2014 WL 12803168 (C.D. Cal. Jan. 31, 2014) ...............................12

*Nghiem v. NEC Elec., Inc.*,
   25 F.3d 1437 (9th Cir. 1994) ...............................................................................................7

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) .............................................................................................7

*Oracle Am., Inc. v. Myriad Grp., A.G.*,
    724 F.3d 1069 (9th Cir. 2013) ...............................................................................10, 11

*Peter v. DoorDash, Inc.*,
    445 F. Supp. 3d 580 (N.D. Cal. 2020) ..............................................................................8

*Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n*,
    218 F.3d 1085 (9th Cir. 2000) ..........................................................................................6

*Sam Reisfeld & Son Import Company v. S.A. Eteco*,
    530 F.2d 679 (5th Cir. 1976) ............................................................................................9

*Shearson/Am. Express, Inc. v. McMahon*,
    482 U.S. 220 (1987)........................................................................................................12

*United States v. Sutcliffe*,
    505 F.3d 944 (9th Cir. 2007) ............................................................................................6

*Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989)..........................................................................................................6

**State Cases**

*Goldman v. KPMG, LLP*,
    173 Cal. App. 4th 209 (Cal. Ct. App. 2009) ..................................................................10

*Shaw v. Regents of Univ. of Calif.*,
    58 Cal. App. 4th 44 (Cal. Ct. App. 1997) ......................................................................15

*Wolschlager v. Fidelity Nat'l Title Ins. Co.*,
    111 Cal. App. 4th 784 (Cal. Ct. App. 2003) ..................................................................15

**Federal Statutes**

9 U.S.C. §§ 1–16...................................................................................................... *passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ..............................................................................1

DEFENDANT COINBASE GLOBAL, INC.'S MOTION TO COMPEL ARBITRATION AND MOTION TO STAY ACTION
Case No. 4:21-cv-08689-HSG

1815680

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on April 28, 2022 at 2:00 p.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Haywood S. Gilliam, Jr., located in Courtroom 2, 4th Floor of the United States Courthouse, 1301 Clay Street, Oakland, California, Defendant Coinbase Global, Inc. ("Coinbase") will and hereby does move this Court to compel individual arbitration of Plaintiff's claims and to stay Plaintiff's claims pending the completion of individual arbitration proceedings.

Defendant submits this Motion under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA") and Federal Rule of Civil Procedure 12(b)(1) based on Plaintiff's agreement to individually arbitrate disputes with Coinbase when agreeing to the Coinbase User Agreement. This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the accompanying Declaration of Carter McPherson-Evans and the exhibits attached thereto, the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and any further argument or evidence that may be received by the Court at the hearing.

Dated: January 21, 2022                                        KEKER, VAN NEST & PETERS LLP

                                                                                   By:    /s/ *Erin E. Meyer*
                                                                                           STEVEN P. RAGLAND
                                                                                           ERIN E. MEYER
                                                                                           JACQUIE P. ANDREANO

                                                                                           Attorneys for Defendant
                                                                                           COINBASE GLOBAL, INC.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.   INTRODUCTION**

3         Plaintiff Adam Alfia entered into a User Agreement with Coinbase that provides (in a

4 section titled "Arbitration; Waiver of Class Action") that "any dispute arising out of or relating

5 to" either the User Agreement or the services provided by Coinbase "*shall* be resolved through

6 binding arbitration, on an individual basis," including any dispute raising claims "based in

7 contract, tort, fraud, misrepresentation, or any other legal theory."  *See* Declaration of Carter

8 McPherson-Evans ("McPherson-Evans Decl."), Ex. 5 § 8.3 (emphasis added).  Mr. Alfia also

9 expressly "waive[d] the right to a trial by jury and the right to participate in a class action."  *Id.*

10 Now, despite those clear commitments, Mr. Alfia has filed this action in federal court,

11 purportedly on behalf of a nationwide class.

12         There can be no serious dispute that his alleged claims "aris[e] out of or relat[e] to" the

13 User Agreement or Coinbase's services.  At a high level, Mr. Alfia alleges that Coinbase failed to

14 "properly secure [his] Coinbase account" and other personal information, permitting it to be

15 accessed by an unauthorized individual.  Dkt. 1 ("Compl.") ¶ 24.  Based on those allegations, Mr.

16 Alfia asserts claims for breach of contract, negligence, fraud, and negligent misrepresentation.

17 Mr. Alfia's Coinbase account is, of course, a "Coinbase service" expressly governed by the terms

18 and conditions of the User Agreement, placing his claims squarely within the scope of the User

19 Agreement's arbitration clause.  And despite the fact that Mr. Alfia attempts to plead around the

20 User Agreement by alleging that his claims relate to Coinbase's Privacy Policy, *see* Compl. ¶¶ 23,

21 32, that Privacy Policy is incorporated by reference into the User Agreement and is indisputably

22 "related to" the User Agreement.

23         Mr. Alfia could and should have pursued his claims in arbitration. He agreed to arbitrate

24 claims that "arise out of" and "relate to" the User Agreement and Coinbase's services, such as the

25 claims he has asserted in his complaint.  Coinbase respectfully requests that the Court order

26 Mr. Alfia to do only that which he previously promised to do—submit his dispute to individual

27 arbitration.

28

1

DEFENDANT COINBASE GLOBAL, INC.'S MOTION TO COMPEL ARBITRATION AND MOTION TO STAY
ACTION
Case No. 4:21-cv-08689-HSG

1815680

## II.    STATEMENT OF ISSUES TO BE DECIDED

This motion raises two issues: (1) whether the Court should compel arbitration of Mr. Alfia's claims on an individual basis, including by allowing the arbitrator to decide any threshold questions regarding arbitrability; and (2) whether the Court should stay this action pending completion of that arbitration.

## III.    FACTUAL BACKGROUND

Coinbase Global, Inc. is the parent company of wholly owned subsidiary Coinbase, Inc. McPherson-Evans Decl. ¶ 3. Coinbase, Inc. operates an online platform for buying, selling, and transferring digital currency like Bitcoin and Ethereum.  McPherson-Evans Decl. ¶ 2.  Before using the Coinbase platform, a prospective user *must* create an account.  Mr. Alfia created his Coinbase account in December 2017 using the Coinbase website.  McPherson-Evans Decl. ¶ 8. When he did so, he was required to—and did—agree to the Coinbase User Agreement.  *Id.* ¶¶ 8, 11–12 & Ex. 1.

In December 2017, any user who created a Coinbase account from an internet browser was required to navigate to http://www.coinbase.com/signup.  McPherson-Evans Decl. ¶ 9.  On this webpage, the prospective user was presented with five fields to provide his or her first and last name, email address, newly created password, and state of residence.  *Id.*  The user was also shown a "check box" prompting them to agree to Coinbase's User Agreement and Privacy Policy, which were accessible via accompanying hyperlinks:

//

//

//

//

//

//

//

//

DEFENDANT COINBASE GLOBAL, INC.'S MOTION TO COMPEL ARBITRATION AND MOTION TO STAY ACTION
Case No. 4:21-cv-08689-HSG

1815680



McPherson-Evans Decl. ¶ 9 & Ex. 2.  A user could not create a Coinbase account without clicking the "check box" indicating acceptance of the User Agreement and Privacy Policy.  *Id.* ¶ 10.

The "User Agreement" phrase shown above is a hyperlink that, when clicked, took the user to a webpage containing the full text of the Agreement.  When Mr. Alfia activated his Coinbase account in December 2017, the Agreement then in effect (the "2017 User Agreement") included the following section titled "**Arbitration; Waiver of Class Action**":

> If you have a dispute with Coinbase, we will attempt to resolve any such disputes through our support team.  **\*\*If we cannot resolve the dispute through our support team, you and we agree that any dispute arising under this Agreement shall be finally settled in binding arbitration, on an individual basis, in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes (accessible at https://www.adr.org/sites/default/files/Consumer%20Rules.pdf) and you and Coinbase hereby expressly waive trial by jury and right to participate in a class action lawsuit or class-wide arbitration…**

McPherson-Evans Decl., Ex. 3, § 7.2 (emphasis supplied).

Coinbase's records confirm that Mr. Alfia created a Coinbase account and accepted the Coinbase User Agreement on December 18, 2017.  McPherson-Evans Decl. ¶ 8 & Ex. 1.

From time to time, Coinbase updates its User Agreement.  The 2017 User Agreement that Mr. Alfia accepted included the following section titled "Amendments":

> We may amend or modify this Agreement by posting on the Coinbase Site or emailing to you the revised Agreement, and the revised Agreement shall be effective at such time. If you do not agree with any such modification, your sole and exclusive remedy is to terminate your use of the Services and close your account. You agree that we shall not be liable to you or any third party for any modification or termination of the Coinbase Services, or suspension or termination of your access to the Coinbase Services, except to the extent otherwise expressly set forth herein. If the revised Agreement includes a material change, we will endeavor to provide you advanced notice via our website and/or email before the material change becomes effective.

McPherson-Evans Decl., Ex. 3 § 8.5.

On December 27, 2018, Coinbase sent the following email to Mr. Alfia, notifying him that it was updating its User Agreement:

> Hello,
>
> Coinbase is committed to being the easiest and most trusted place to buy and sell crypto. As part of our growth, we are making some updates to our User Agreement. These updates will take effect for all users on January 31st, 2019 (the current User Agreement is available here).
>
> For more information and a summary of the changes, please see here.
>
> We also like to keep you up to date on how we collect, use, and protect your personal information by reminding you to check out our Privacy Policy every year. We encourage you to review it carefully.
>
> To learn more about our products and policies, visit support.coinbase.com.
>
> Kind regards,
>
> The Coinbase Team

McPherson-Evans Decl., Ex. 4.

The User Agreement in effect as of January 31, 2019 (the "2019 User Agreement") contained an updated "Arbitration; Waiver of Class Action" section which states, in relevant part,

4

as follows:

> If we cannot resolve the dispute through the Formal Complaint Process, you and we agree that any dispute **arising out of or relating to** this Agreement or the Coinbase Services, including, without limitation, federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation, or any other legal theory, shall be resolved through binding arbitration, on an individual basis (the "Arbitration Agreement") . . . Arbitration shall be conducted in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes (accessible at **https://www.adr.org/sites/default/files/Consumer%20Rules.pdf**).

> This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. All such matters shall be decided by an arbitrator and not by a court or judge.

> **CLASS ACTION WAIVER: TO THE EXTENT PERMISSIBLE BY LAW, ALL CLAIMS MUST BE BROUGHT IN A PARTY'S INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, COLLECTIVE ACTION, OR REPRESENTATIVE PROCEEDING (COLLECTIVELY "CLASS ACTION WAIVER"). THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS OR ENGAGE IN ANY CLASS ARBITRATION. YOU ACKNOWLEDGE THAT, BY AGREEING TO THESE TERMS, YOU AND COINBASE ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION.**

McPherson-Evans Decl., Ex. 5 § 8.3 (first emphasis supplied).

Coinbase's records demonstrate that Mr. Alfia continued to use Coinbase's services after the 2019 User Agreement took effect.  McPherson-Evans Decl. ¶ 21.

Mr. Alfia alleges that on July 19, 2021, he realized that someone had used his account to make an unauthorized purchase of $50,000 worth of ether (a digital currency). *See* Compl. ¶ 12.  This transaction was reversed by Mr. Alfia's bank, Bank of America, and the $50,000 was returned to Mr. Alfia's bank account.  McPherson-Evans Decl. ¶ 21. As a result of that reversal, Coinbase's system reclaimed $50,000 worth of ether from Mr. Alfia's account, which, due to fluctuation in ether's price, left him with a windfall of 2.75325212 ether in his account.  *Id.* ¶ 21 & Ex. 6.

## IV.   LEGAL STANDARD

Both the 2017 and the 2019 versions of the User Agreement contain arbitration clauses

that are governed by the Federal Arbitration Act ("FAA"), which applies to "any written provision in a 'contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract.'" *Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n*, 218 F.3d 1085, 1089 (9th Cir. 2000) (quoting 9 U.S.C. § 2).  The term "involving commerce" is the "functional equivalent of the more familiar term 'affecting commerce'[,]" which represents the "broadest permissible exercise of Congress' Commerce Clause Power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam) (citation omitted).

Here, the alleged transaction involved interstate commerce, as evidenced by the fact that Mr. Alfia, who is a resident of Texas, Compl. ¶ 3, contracted to do business over the Internet with Coinbase, a Delaware corporation with its principal place of business in California, *id.* ¶ 2. Moreover, where the underlying transactions involve the use of Internet technologies to transfer digital currencies, the "involving commerce" requirement has necessarily been satisfied.  *See United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("[T]he Internet is an instrumentality and channel of interstate commerce.") (internal quotation marks and citation omitted). Accordingly, the FAA governs the arbitration clause in both the 2017 and the 2019 User Agreements.

The FAA provides that a written contractual provision to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Supreme Court has repeatedly emphasized that the FAA creates a strong, liberal federal policy that favors arbitration. *See, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989).  Against that backdrop, this Court's role in deciding Coinbase's motion to compel individual arbitration is a narrow one.  "[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citation omitted).  Generally, the Court examines two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and . . . (2) whether the agreement encompasses the

dispute at issue." *Id.* But where, as here, the parties have "clearly and unmistakably" delegated questions of arbitrability to the arbitrator, the Court's role is further limited to determining the effectiveness of the delegation clause itself. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015).

## V.    ARGUMENT

Mr. Alfia agreed to Coinbase's User Agreement, which requires that his claims be submitted to and resolved by an arbitrator. Indeed, because the User Agreement expressly delegates all "gateway" arbitration questions to the arbitrator—including questions about the enforceability or scope of the arbitration agreement itself—this Court need not evaluate whether the agreement is valid, or whether its arbitration clause encompasses Mr. Alfia's claims. But, even if this Court were to reach those questions, controlling law would require it to compel arbitration here.

### A.    Mr. Alfia and Coinbase consented to final and binding individual arbitration by agreeing to the 2019 User Agreement.

"[A]rbitration is a matter of contract," *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986) (citations omitted), and state contract law controls whether the parties have agreed to arbitrate a dispute. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (citation omitted). An arbitration agreement need only be in writing, and no signature by either party is necessary. *See* FAA, 9 U.S.C. § 2; *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994) ("While the FAA requires a writing, it does not require that the writing be signed by the parties.") (internal quotations and citation omitted).

Under California law, "mutual assent is the key to contract formation." *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017) (citing *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999)). Here, Mr. Alfia agreed to the 2017 User Agreement by affirmatively clicking the "check box" indicating his acceptance of the Agreement. *See* McPherson-Evans Decl. ¶ 8 & Ex. 1. This constitutes a classic "clickwrap" contract, "in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014).

"[C]ourts routinely find [clickwrap agreements] valid and enforceable because the user must affirmatively acknowledge receipt of the terms of the contract." *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2018 WL 1913832, at *2 (N.D. Cal. Jan. 24, 2018); *see also Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015) (finding that contract was formed "when the plaintiff clicked on a button to indicate assent to an agreement in which the terms themselves were accessed by hyperlink.") (citation omitted); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 582 (N.D. Cal. 2020) (enforcing arbitration agreement where users were presented with hyperlinked terms and notified that, "[b]y tapping Sign Up . . . you agree to our Terms and Conditions"). This makes good sense, because "courts have long upheld contracts where the consumer is prompted to examine terms of sale that are located somewhere else." *Levin*, 146 F. Supp. 3d at 1157 (internal quotations omitted).

When Mr. Alfia accepted the 2017 User Agreement, by affirmatively clicking the "check box," he confirmed that he assented to be bound by that Agreement and all of its terms. *See* McPherson-Evans Decl. ¶ 8 & Ex. 1.[1] These included a change-in-terms provision, which stated that Coinbase could "modify this Agreement by . . . emailing to you the revised Agreement, and the revised Agreement shall be effective at such time." *Id.*, Ex. 3 § 8.5. If a user did not agree to be bound by an updated User Agreement, his "sole and exclusive remedy is to terminate [his] use of the Services and close [his] account . . ." *Id.*

Coinbase invoked this change-in-terms provision on December 27, 2018, when it sent an email to Mr. Alfia, notifying him that it was updating its User Agreement and providing hyperlinks to the 2019 User Agreement.[2] *See* McPherson-Evans Decl. ¶¶ 16, 18 & Ex. 4. After receiving that notice, Mr. Alfia chose to continue using his Coinbase account to buy, sell, and trade cryptocurrency. *See id.* ¶ 20. This was sufficient to constitute Mr. Alfia's consent to the

---

[1] Indeed, the 2017 User Agreement (accepted through the same method described herein) has been enforced by the Ninth Circuit in a prior case. *See Berk v. Coinbase*, 840 F. App'x 914, 916 (9th Cir. 2020).

[2] Coinbase emailed Mr. Alfia to notify him that it was updating its User Agreement on December 27, 2018. The 2019 User Agreement took effect on January 31, 2019. Thereafter, Mr. Alfia continued to use his Coinbase Services, for instance, on April 15, 2021. McPherson-Evans Decl. ¶ 20. The alleged unauthorized access to Mr. Alfia's account occurred on July 18, 2021.

8

2019 User Agreement.  *See, e.g.*, *Matera v. Google Inc.*, No. 15-cv-04062-LHK, 2016 WL 5339806, at \*17 (N.D. Cal. Sept. 23, 2016) (holding that "users of the individual Gmail service agreed to [an updated terms of service agreement] upon its posting" where the earlier terms of service stated that modifications would be posted on their website and that if account holders "do not agree to the modified terms for a Service, [they] should discontinue [their] use of that Service"); *DeVries v. Experian Information Solutions, Inc.*, No. 16-cv-02953-WHO, 2017 WL 733096, at \*7 (N.D. Cal. Feb. 24, 2017) (enforcing updated Terms of Use where prior Terms of Use included a change-in-terms provision).

        *In re Facebook Biometric Information Privacy Litigation* is instructive.  There, Facebook users "were provided notice that the terms of [Facebook's] user agreement were changing through an email from Facebook sent directly to the email addresses each plaintiff had on file with Facebook."  185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016).  Thereafter, each plaintiff "remain[ed] an active Facebook user[.]"  *Id.*  The court held that "[t]his individualized notice in combination with a user's continued use is enough for notice and assent" to the updated terms of a user agreement.  *Id.*  The same is true here.  Mr. Alfia received individualized notice of the 2019 User Agreement via the email Coinbase had on file for him and thereafter continued to use his Coinbase account.  By doing so, he consented to the 2019 User Agreement and is bound by the arbitration clause therein.[3]

---

[3] To the extent Mr. Alfia argues that his claims are not subject to arbitration because he entered into the User Agreement with Coinbase, Inc. instead of Coinbase Global, Inc. (the nominal defendant in this case), that argument should be rejected.  ***First***, Mr. Alfia's business relationship is with Coinbase, Inc., which is a wholly owned subsidiary of Coinbase Global.  Mr. Alfia has no independent business relationship with Coinbase Global.  McPherson-Evans Decl. ¶ 3.  Accordingly, he cannot bring suit against Coinbase Global as a mechanism to avoid his arbitration agreement with Coinbase, Inc.  As this Court recently held, "[c]ourts applying California law have routinely found that '[w]hen charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer those claims against the parent to arbitration . . . even if the parent is not formally a party to the arbitration agreement.'"  *Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166, 1172 (N.D. Cal. 2021) (quoting *Naria v. Trover Sols., Inc.*, 967 F. Supp. 2d 1332, 1339 (N.D. Cal. 2013); *Wilmot v. McNabb*, 269 F. Supp. 2d 1203, 1208 (N.D. Cal. 2003)).  The Fifth Circuit put it this way when faced with similar facts: "[i]f the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."  *Sam Reisfeld & Son Import Company v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976); *accord J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988).  ***Second***, Mr. Alfia is attempting to seek a benefit under the Privacy Policy he entered into with Coinbase, Inc. (*see* McPherson-Evans Decl., Ex. 7, § 2 (showing that Coinbase, Inc. is

9

1

2

**B.      The 2019 User Agreement clearly and unmistakably delegates determination of "gateway" arbitration questions to the arbitrator.**

It is well established that parties may agree to delegate to an arbitrator "gateway"

questions about the existence of an arbitration agreement and the scope of that agreement.  Such a

delegation clause is "simply an additional, antecedent agreement the party seeking arbitration

asks the federal court to enforce, and the FAA operates on this additional arbitration agreement

just as it does on any other."  *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524,

529 (2019) (internal quotation marks and citation omitted).  Delegation clauses are enforceable

when they "clearly and unmistakably delegate[] arbitrability questions to the arbitrator."

*Brennan*, 796 F.3d at 1132; *see also Oracle Am., Inc. v. Myriad Grp., A.G.*, 724 F.3d 1069, 1072–

73 (9th Cir. 2013) (same).

The 2019 User Agreement contains an express delegation clause:

> **This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. All such matters shall be decided by an arbitrator and not by a court or judge.**

McPherson-Evans Decl., Ex. 5 § 8.3 (emphasis in original).  This clear delegation of authority

forecloses any question that the arbitrator, and not this Court, must decide any gateway questions

regarding the scope or enforceability of the arbitration clause in the 2019 User Agreement.  *See*

*Fridman v. Uber Techs., Inc.*, No. 18-cv-02815-HSG, 2019 WL 1385887, at *5 (N.D. Cal. Mar.

27, 2019) (holding that the terms of a similar delegation provision "clearly and unmistakably

delegate the gateway question of arbitrability to the arbitrator"); *Britt v. ContextLogic, Inc.*, No.

---

the "Operating Entity" for users in the United States)) by suing Coinbase Global.  *See, e.g.*,
Compl. ¶ 23.  Because the Privacy Policy is incorporated by reference into the User Agreement,
Mr. Alfia should be equitably estopped from arguing that Coinbase Global cannot enforce the
User Agreement's arbitration provision because it is a nonsignatory.  California law states that "a
signatory to an agreement with an arbitration clause ***cannot have it both ways***; the signatory
cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the
agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's
applicability because the defendant is a non-signatory."  *Goldman v. KPMG, LLP*, 173 Cal. App.
4th 209, 220 (Cal. Ct. App. 2009) (emphasis added, internal quotation marks omitted); *see also*
*Larson v. Speetjens*, No. 05-cv-3176-SBA, 2006 WL 2567873, at *7 (N.D. Cal. Sept. 5, 2006),
*order clarified*, 2006 WL 3365589 (N.D. Cal. Nov. 17, 2006) ("No person can be permitted to
adopt that part of an entire transaction which is beneficial to him/her, and then reject its
burdens.").

1   3:20-cv-04333-WHA, 2021 WL 1338553, at *6 (N.D. Cal. Apr. 9, 2021) (same).

2          What's more, the parties also incorporated the AAA Consumer Arbitration Rules into the

3   User Agreement.  Those rules—and specifically Rule 14(a)—make clear that it is the *arbitrator*

4   who has "the power to rule on his or her own jurisdiction, including any objections with respect

5   to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim

6   or counterclaim."  *See* McPherson-Evans Decl., Ex. 5 § 8.3 ("Arbitration shall be conducted in

7   accordance with the American Arbitration Association's rules for arbitration of consumer-related

8   disputes…" (emphasis removed)).  Courts in this circuit have routinely held that incorporation of

9   AAA or JAMS rules is sufficient evidence that the parties intended to delegate questions of

10  arbitrability to the arbitrator.  *See, e.g.*, *Brennan*, 796 F.3d at 1130; *see also Oracle America*, 724

11  F.3d at 1074 ("Virtually every circuit to have considered the issue has determined that

12  incorporation of the American Arbitration Association's arbitration rules constitutes clear and

13  unmistakable evidence that the parties agreed to arbitrate arbitrability.").  The fact that this is a

14  consumer case makes no difference.  *See, e.g.*, *Gerlach v. Tickmark Inc.*, No. 4:21-cv-02768-

15  YGR, 2021 WL 3191692, at *4 (N.D. Cal. July 28, 2021) (holding that, since *Brennan*, the

16  "greater weight of authority has concluded that the holding of *Brennan* applies similarly to non-

17  sophisticated parties," including in consumer cases) (internal quotation marks, brackets and

18  citation omitted).

19         Because the parties clearly and unmistakably intended to delegate "gateway" questions of

20  arbitrability and enforceability to the arbitrator—as evidenced by the 2019 User Agreement's

21  express delegation clause, as well as its incorporation of the AAA Consumer Arbitration Rules—

22  the Court should refer this case to the AAA for arbitration.

23         **C.     The 2019 User Agreement is valid, enforceable, and encompasses Mr. Alfia's
24                  claims.**

25         Even if the Court declines to enforce the parties' clear delegation agreement, it should

26  nonetheless compel arbitration because (i) the parties entered into a binding contract containing a

27  valid arbitration clause, and (ii) Mr. Alfia's claims fall within the scope of that clause.

28

1

          **1.**      **The 2019 User Agreement is presumptively valid and enforceable.**

2

      As explained above, Mr. Alfia and Coinbase consented to final and binding individual

3

arbitration by agreeing to the 2019 User Agreement.  Arbitration agreements governed by the

4

FAA are presumed valid and enforceable.  *See Shearson/Am. Express, Inc. v. McMahon,* 482 U.S.

5

220, 226–27 (1987).  This reflects Congress's intent behind the FAA: to reverse longstanding

6

judicial hostility toward arbitration and evince a "liberal federal policy favoring arbitration

7

agreements."  *See Gilmer*, 500 U.S. at 25 (citations omitted); *see also Moses H. Cone Mem'l*

8

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  The FAA therefore mandates

9

enforcement of an arbitration clause unless grounds exist "at law or in equity for the revocation of

10

any contract."  9 U.S.C. § 2.  Likewise, the Supreme Court has held that class-action waivers, like

11

the one in the 2019 User Agreement, are enforceable under the FAA.  *See Epic Sys., Corp. v.*

12

*Lewis*, 138 S. Ct. 1612, 1621 (2018); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339

13

(2011).

14

      To the extent Mr. Alfia contends that the 2019 User Agreement and the arbitration terms

15

therein are somehow invalid or unenforceable, he would bear the burden to prove that his claims

16

are unsuitable for arbitration.  *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91–92

17

(2000).  Accordingly, Coinbase will address any such arguments, if necessary, on reply.

18

          **2.**      **Mr. Alfia's claims fall within the scope of the arbitration clause.**

19

      Under the 2019 User Agreement, Mr. Alfia and Coinbase agreed broadly to arbitrate any

20

claims that either arise out of *or* relate to the User Agreement *or* the "Coinbase Services" which

21

are defined broadly as "the services provided by Coinbase."  McPherson-Evans Decl., Ex. 5 at

22

Preamble.  "An agreement that requires the parties to arbitrate 'any dispute arising out of or

23

relating to' an agreement is intended 'to reach all aspects of their relationship.'"  *Neurosigma,*

24

*Inc. v. De Salles*, No. 13-cv-07973-DMG, 2014 WL 12803168, at *3 (C.D. Cal. Jan. 31, 2014)

25

(quoting *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 732 (9th Cir. 2006)).

26

      Here, Mr. Alfia asserts four causes of action: breach of contract, negligence, fraud, and

27

negligent misrepresentation.  These claims each fall within the scope of the arbitration clause in

28

the 2019 User Agreement because they arise out of or relate to Coinbase's provision of services

to its users.  Specifically, Mr. Alfia's claims are premised on his allegation that, on July 19, 2021, he realized someone had used his account to make an unauthorized purchase of $50,000 worth of ether.  Compl. ¶ 12.  He does not allege that the ether in question was transferred out of his account or that he was unable to recoup the funds used for this allegedly unauthorized purchase. Based on this transaction, however, Mr. Alfia asserts that Coinbase "failed to properly secure Plaintiff and the putative class's private information and cryptocurrency from unauthorized transactions and dissemination."  *Id.* ¶ 29.  In his first claim for breach of contract (and specifically, breach of the Coinbase Privacy Policy), Mr. Alfia alleges that Coinbase breached the contract "by failing to properly secure Plaintiff's Coinbase account allowing it to be pillaged [by] an unauthorized individual or entity."  *Id.* ¶ 24.[4]  In his second claim for negligence, Mr. Alfia asserts that "Coinbase had a duty to Plaintiff and the putative class wherein it would properly secure their private information and cryptocurrency from unauthorized transactions and dissemination," and that Coinbase breached that duty.  *Id.* ¶¶ 28–29.  In his third claim for fraud, Mr. Alfia asserts that Coinbase fraudulently represented that it "maintains appropriate physical, technical and administrative safeguards to protect the security and confidentiality of the personal information" of its account holders."  *Id.* ¶ 32.  Finally, Mr. Alfia's fourth claim for negligent misrepresentation is pled in the alternative to his fraud claim and is based on the same allegations. *Id.* ¶ 37.

In other words, these are claims about services Coinbase did or (in Mr. Alfia's view) should have provided.  Because all four claims focus on Coinbase's conduct, and its provision of services to Coinbase users, they plainly "relat[e] to … the Coinbase Services" and are therefore subject to individual arbitration.  *See* McPherson-Evans Decl., Ex. 5 § 8.3.  Indeed, the User Agreement specifically addresses account security as well as both Coinbase's and its users' obligations in the event of unauthorized transactions:

> You are responsible for creating a strong password and maintaining adequate security and control of any and all IDs, passwords, hints, personal identification numbers (PINs), API keys or any other codes that you use to access the Coinbase

---
[4] The Complaint purports to attach the Privacy Policy as "Exhibit A," but no exhibits were attached to the filed version of the Complaint.  *See* Compl. ¶ 23.

Services. Any loss or compromise of the foregoing information and/or your personal information may result in unauthorized access to your Coinbase Account(s) by third-parties and the loss or theft of any Digital Currency and/or funds held in your Coinbase Account(s) and any associated accounts, including your linked bank account(s) and credit card(s). . . . *We assume no responsibility for any loss that you may sustain due to compromise of account login credentials due to no fault of Coinbase and/or failure to follow or act on any notices or alerts that we may send to you.*

McPherson-Evans Decl., Ex. 5 § 7.12 (emphasis added).  Accordingly, there can be no dispute that Mr. Alfia's claims arise out of and relate to the User Agreement.

Mr. Alfia will likely argue that his breach-of-contract, fraud, and negligent misrepresentation claims are not subject to arbitration because they are based on alleged breaches of the Privacy Policy instead of the User Agreement.  *See* Compl. ¶¶ 23, 32, 37.  This is a transparent attempt to avoid his binding agreement to arbitrate his claims—an attempt that, in any event, fails.  Mr. Alfia's claims are inextricably tied to the "Coinbase Services" as defined in the User Agreement.  Moreover, Mr. Alfia's invocation of the Privacy Policy *supports* Coinbase's argument that his claims fall within the scope of the User Agreement.  These claims plainly arise out of or relate to the 2019 User Agreement because Coinbase's Privacy Policy is incorporated by reference into the User Agreement.  Indeed, the first paragraph of the 2019 User Agreement states:

By signing up to use an account through coinbase.com, pro.coinbase.com, APIs, or the Coinbase mobile application (collectively the "Coinbase Site"), *you agree that you have read, understand, and accept all the terms and conditions contained in* this Agreement including Section 8.2. "Arbitration; Waiver of Class Action", as well as our *Privacy Policy*, Cookie Policy, and E-Sign Consent Policy.

McPherson-Evans Decl., Ex. 5 at Preamble (emphases added).  The words "Privacy Policy" were shown in blue, indicating a hyperlink which, when clicked, routed the user to the text of the Privacy Policy.  The Privacy Policy is referenced eight more times throughout the 2019 User Agreement, and six of these references also include a hyperlink to the relevant document.  *Id.*, Ex. 5 §§ 1.4, 3.8, 6.1, 9.4, Appendix 2, Appendix 3.  Moreover, Section 9.4 of the 2019 User Agreement explicitly states that "[t]his Agreement, the *Privacy Policy*, E-Sign Consent, and Appendices *incorporated by reference herein* comprise the entire understanding and agreement between you and Coinbase as to the subject matter hereof[.]"  *Id.*, Ex. 5 § 9.4 (emphases added).

Thus, the 2019 User Agreement clearly and unequivocally incorporates the Privacy Policy.

"It is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document . . . . For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Shaw v. Regents of Univ. of Calif.*, 58 Cal. App. 4th 44, 54 (Cal. Ct. App. 1997) (internal quotation marks and citations omitted).  Here, the 2019 User Agreement itself makes numerous references to the Privacy Policy and provides in-text hyperlinks to the Privacy Policy.  Courts have routinely held that, under similar fact patterns, a privacy policy has been incorporated into "terms and conditions" contracts.  *See*, *e.g.*, *In re Anthem, Inc. Data Breach Litigation*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *9–10 (N.D. Cal. May 27, 2016) (holding that defendant's privacy policies were incorporated by reference into its contracts with plaintiffs where "each contract includes several specific references to [the] privacy policies" and "called attention to the [] privacy policies and gave instructions on how consumers could review these policies in greater detail"); *see also Wolschlager v. Fidelity Nat'l Title Ins. Co.*, 111 Cal. App. 4th 784, 791 (Cal. Ct. App. 2003) (finding a document incorporated by reference where the contract "identifies the document incorporated as the policy, lists the form which is contemplated and tells the recipient where they can find the policy").

Because all of Mr. Alfia's claims focus on Coinbase's provision of services (or alleged failure to provide services) to him as a customer, the claims plainly arise out of and relate to the 2019 User Agreement.  The Court should compel individual arbitration of all of Mr. Alfia's claims.

> **D.    Even if the operative agreement were the 2017 User Agreement, Mr. Alfia would still be required to arbitrate his claims.**

Even if the Court were to find that Mr. Alfia did not consent to the 2019 User Agreement (he did), he would still be bound to arbitrate his claims under the terms of the 2017 User Agreement.  All of Mr. Alfia's claims plainly "aris[e] under" the 2017 User Agreement.

***First***, as set forth above, all four of Mr. Alfia's causes of action focus on Coinbase's alleged failure to secure Mr. Alfia's ***Coinbase account***, which is indisputably a Coinbase Service covered by the 2017 User Agreement.  Compl. ¶¶ 24, 28–29, 32, 37.  Similar to the 2019 User Agreement, the 2017 User Agreement specifically addresses account security:

> You are responsible for maintaining adequate security and control of any and all IDs, passwords, hints, personal identification numbers (PINs), API keys or any other codes that you use to access the Coinbase Services. Any loss or compromise of the foregoing information and/or your personal information may result in unauthorized access to your Coinbase Account by third-parties and the loss or theft of any Digital Currency and/or funds held in your Coinbase Account and any associated accounts, including your linked bank account(s) and credit card(s). ***We assume no responsibility for any loss that you may sustain due to compromise of account login credentials due to no fault of Coinbase*** and/or failure to follow or act on any notices or alerts that we may send to you.

McPherson-Evans Decl., Ex. 3 § 6.9 (emphasis added).  This provision will necessarily be front and center for any factfinder evaluating Mr. Alfia's claims.

As the Ninth Circuit noted in concluding that arbitration was required under Coinbase's 2017 User Agreement, "[w]e have held that a claim 'arises under' an agreement when it 'relate[es] to the interpretation and performance of the contract itself.'"  *Berk*, 840 F. App'x at 915 (reversing district court and holding that the plaintiffs' claims against Coinbase are subject to arbitration) (quoting *Tracer Rsch. Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994)).  The Ninth Circuit went on to explain that, although the plaintiffs argued that their claims sounded in tort and therefore did not "arise under" the User Agreement, "***to the extent Coinbase owed plaintiffs a duty . . . it arose under the User Agreement***" and was therefore subject to arbitration.  *Id.* at 916 (emphasis added).  The same is true here: Mr. Alfia's claims revolve around what duties Coinbase owed him in connection with his Coinbase account.  Because the terms under which he was permitted to open that account are set forth in the User Agreement, his claims in this case arise under the User Agreement and must be arbitrated.

***Second***, Mr. Alfia's claims purport to rely on Coinbase's Privacy Policy, which is incorporated into the User Agreement by reference.  Like the 2019 User Agreement, the 2017 User Agreement clearly references and links to the Privacy Policy.  McPherson-Evans Decl., Ex. 3 at Preamble, §§ 2.2, 8.4, Appendix 3.  And, like the 2019 User Agreement, the 2017 User

16

1   Agreement also makes clear that [t]his Agreement, ***the Privacy Policy***, E-Sign Consent, and

2   Appendices ***incorporated by reference herein*** comprise the entire understanding and agreement

3   between you and Coinbase as to the subject matter hereof[.]" *Id.*, Ex. 3 § 8.4 (emphases added).

4   Accordingly, there can be no dispute that claims premised on the Privacy Policy "arise under" the

5   contract that incorporates the Privacy Policy.

6        **E.      The action should be stayed pending the completion of Mr. Alfia's individual
              arbitration proceedings.**
7

8        When a dispute covered under an arbitration clause is brought in a suit in federal court, the

9   court must stay the action upon application of any of the parties.  9 U.S.C. § 3.  Where, as here,

10  the issues in the case are within the reach of the arbitration agreement, the district court has no

11  discretion to deny a stay.  *See Holl v. United Parcel Service, Inc.*, No. 16-cv-05856-HSG, 2017

12  WL 11520143, at *3 (N.D. Cal. Sept. 18, 2017) (explaining that "federal district courts are

13  required to stay judicial proceedings and compel arbitration of claims covered by an enforceable

14  arbitration agreement"); *BrowserCam, Inc. v. Gomez, Inc.*, No. 08-cv-02959-WHA, 2009 WL

15  210513, at *3 (N.D. Cal. Jan. 27, 2009) ("A motion to stay . . . is mandatory and must be granted

16  as to all matters within the scope of the arbitration agreement.").  Coinbase respectfully requests

17  that the Court stay this action under Section 3 of the FAA.

18  **VI.    CONCLUSION**

19       For the reasons set forth herein, Coinbase respectfully requests that the Court compel Mr.

20  Alfia to arbitrate his claims on an individual basis and stay this action pending completion of the

21  arbitration.

22

23  Dated:  January 21, 2022                         KEKER, VAN NEST & PETERS LLP

24                                          By:   /s/ *Erin E. Meyer*

25                                                STEVEN P. RAGLAND
                                                  ERIN E. MEYER
26                                                JACQUIE P. ANDREANO

27                                                Attorneys for Defendant
                                                  COINBASE GLOBAL, INC.
28

DEFENDANT COINBASE GLOBAL, INC.'S MOTION TO COMPEL ARBITRATION AND MOTION TO STAY
ACTION
Case No. 4:21-cv-08689-HSG

1815680