Evan Selik (SBN 251039)
Christine Zaouk (SBN 251355)
McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, California 90014
(213) 225-6150 / Fax (213) 225-6151
eselik@mccathernlaw.com
czaouk@mccathernlaw.com

Attorneys for Plaintiff,
ADAM ALFIA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ADAM ALFIA, individually and on behalf of other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COINBASE GLOBAL, INC.; and DOES 1 through 50<br><br>Defendants. | CASE NO. 4:21-cv-08689-HSG<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY OF THE CASE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: April 28, 2022<br>Time: 2:00 p.m.<br>Dept.: Courtroom 2, 4th Floor<br><br>Complaint Filed: November 8, 2021<br>Trial Date: None |

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES............................................6

I.      INTRODUCTION.........................................................................................6

II.     STATEMENT OF ISSUES TO BE DECIDED.............................................6

III.    FACTUAL BACKGROUND ........................................................................7

IV.     LEGAL STANDARD ...................................................................................9

V.      ARGUMENT ..............................................................................................10

     A.  The Arbitration Clause Does Not Apply to Alfia's Claims.................11

     B.  Alfia Did Not Agree to the 2019 User Agreement. ............................13

     C.  The Court, Not an Arbitrator, Should Determine Questions of Arbitrability...................................................................................18

     D.  The Arbitration Clause is Unconscionable and Therefore is Unenforceable. ...............................................................................20

     E.  None of the Arbitration Clauses Apply to this Case...........................22

     F.  The Action Should Not be Stayed and Should Continue in this Court................................................................................................22

VI.     CONCLUSION ...........................................................................................23

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

## **TABLE OF AUTHORITIES**

**Federal Cases**

*Cairo, Inc. v. Crossmedia Servs., Inc.*, No. 04-04825, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ..................................................................................................... 15

*Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002). ....................... 9, 18

*Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014) .................... 11

*Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287 (2010) ........................ 11

*In re Facebook Biometric Information Privacy Litigation*, 185 F.Supp.3d 1155 (N.D. Cal. 2016). ................................................................................................ 15

*In re Zappos.com, Inc. Customer Data Sec. Breach Lit.*, 893 F.Supp.2d 1058 (D. Nev. 2012) ........................................................................................................ 14

*Laster v. T-Mobile, USA, Inc.*, 407 F.Supp.2d 1181 (S.D. Cal. 2005) ...... 8, 18, 19, 21

*Lucas v. Gund, Inc.*, 450 F.Supp.2d 1125 (C.D. Cal. 2006) ...................................... 9

*Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014) ....................... 13, 15

*Pollstar v. Gigmania, Ltd.*, 170 F.Supp.2d 974 (E.D. Cal. 2000) ........................... 15

*Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002) ........................... 13

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) ........................................................ 20

*Van Tassell v. United Marketing Group, LLC*, 795 F.Supp.2d 770 (N.D. Ill. 2011) 14

**State Cases**

*Aanderud v. Superior Ct.*, 13 Cal.App.5th 880 (Cal. Ct. App. 2017) ...................... 17

*Baker v. Osborne Dev. Corp.*, 159 Cal.App.4th 884 (Cal. Ct. App. 2008) ......... 12, 20

*Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal.App.3d 632 (Cal. Ct. App. 1986). 9, 11, 12

*Hill v. Morton, Inc. v. Coughlan*, 214 Cal.App.2d 545 (Cal. Ct. App. 1963) ........... 16

*King v. Larsen Realty, Inc.*, 121 Cal.App.3d 349 (Cal. Ct. App. 1981) ................... 12

*Pinnacle Museum Tower Assn. v. Pinnacle Market Dev. (US), LLC*, 55 Cal.4th 223 (Cal. 2012) ........................................................................................................ 8

*Titan Group, Inc. v. Sonoma Valley County Sanitation Dist.*, 164 Cal.App.3d 1122

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

3

(Cal. Ct. App. 1985) ........................................................................... 9

*Vandenberg v. Superior Court*, 21 Cal. 4th 815 (Cal. 1999) ..................................... 11

**<u>Statutes</u>**

Fed. R. Civ. P. Rule 23 .......................................................................... 5

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

4

Plaintiff, Adam Alfia, individually and on behalf of other persons similarly situated, ("Alfia" or "Plaintiff") submit this Opposition to Defendant's Motion to Compel Arbitration and Motion to Stay the Action.

This Opposition is based on the following Memorandum of Points and Authorities, the accompanying exhibits attached thereto, the Declaration of Evan Selik, the pleadings and other documents on file in this case, all other matters of which of the Court may take judicial notice, and any further argument or evidence that may be received by the Court at the hearing.

Date: January 31, 2022                    McCATHERN, LLP


By:   */s/ Evan Selik*
      EVAN SELIK
      CHRISTINE ZAOUK
      Attorneys for Plaintiffs,
      ADAM ALFIA

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This is a consumer class action lawsuit pursuant to Fed. R. Civ. P. Rule 23, seeking damages for the data breach allowed by Defendants. Alfia's claims are based on Coinbase's violation of its Privacy Policy alone. The stated facts below clearly show that the claims at issue stem from the Privacy Policy. The Privacy Policy does not contain an arbitration clause, and the Privacy Policy does not incorporate the arbitration clause from the User Agreement.[1] Without this incorporation, Alfia did not agree to arbitrate the disputes at issue in the instant case. Because Alfia did not agree to arbitrate the disputes, Coinbase's Motion to Compel Arbitration should be denied.

## II.   STATEMENT OF ISSUES TO BE DECIDED

This Opposition raises four issues: (1) whether the arbitration clause applies to the instant case; (2) whether Alfia assented to the 2019 User Agreement; (3) whether the Court can determine questions of arbitrability; and (4) whether the arbitration clause is valid and enforceable.

[1] Ex. 1 to Selik Decl.

Plaintiff's Opposition to Defendant's Motion to Compel Arbitration and to Stay
Case No. 4:21-cv-08689-HSG

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

### III.   FACTUAL BACKGROUND

On July 19, 2021, Alfia logged into his Coinbase account and found an unauthorized transaction for the purchase of $50,000 of Ethereum, for which the money was also removed from Alfia's bank account. Due to this clear breach of privacy, Alfia filed this case on November 8, 2021.

In the instant case, Alfia's claims for breach of contract, negligence, fraud, and negligent misrepresentation all arise from Coinbase's Privacy Policy alone. In Alfia's Complaint, he clearly states that the breach of contract claim arises from Coinbase breaching Sections 5, 10, and 11 of its Privacy Policy.[2]  Further, Section 5 of Privacy Policy addresses how Coinbase will use a customer's personal information.[3] Section 10 addresses how Coinbase will retain a customer's personal information, and Section 11 addresses third-party sites and services. *Id*. None of the versions of Coinbase's User Agreement it purports to be at issue in this case address the same information.[4]

Additionally, Alfia's negligence claim stems from Coinbase's breach of its duty to protect its customer's information, which is stated in its Privacy Policy.

---

[2] *See* Plaintiff's Class Action Complaint, at p. 7 ¶23

[3] Ex. 1 to Selik Decl., Sections 5, 10 and 11

[4] Ex. 3 and 5 to McPherson-Evans Decl., Moving Papers ("MP")

7

Again, the same information is not reflected in Coinbase's User Agreement.

Also, Alfia's fraud claim stems from, and directly quotes to, Coinbase's Privacy Policy.[5] Specifically, Coinbase represented to its customers that "CB maintains appropriate physical, technical and administrative safeguards to protect the security and confidentiality of the personal information you entrust to us."[6] This information is solely found in Coinbase's Privacy Policy.

Finally, Alfia's negligent misrepresentation claim directly relates to Alfia's other claims, which are based solely on the Privacy Policy.

Put simply, Coinbase's Privacy Policy was the agreement with Coinbase that stated the specific representations upon which Alfia's claims are based. Further, Coinbase's Privacy Policy contains promises from Coinbase and obligations for Coinbase, whereas, Coinbase's User Agreement is specific to how a customer can use the Coinbase platform, and the promises a customer makes to Coinbase. These two agreements are wholly separate. This is exemplified not only by the User Agreement and Privacy Policy being on separate pages, but also, it is exemplified when a customer signs up that they are agreeing to two *separate* agreements.[7]

---

[5] *See* Plaintiff's Class Action Complaint, at p. 9 ¶32

[6] Ex. 1 to Selik Decl., Section 9

[7] Ex. 2 to McPherson-Evans Decl., MP

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

## IV.   LEGAL STANDARD

Coinbase, as the party seeking arbitration, bears the burden to prove the existence of the arbitration agreement. *Pinnacle Museum Tower Assn. v. Pinnacle Market Dev. (US), LLC*, 55 Cal.4th 223, 236 (Cal. 2012). If Coinbase meets its burden, then Alfia, as the party seeking to avoid arbitration, bears the burden to establish a defense to its enforcement. *Id*.

When a court decides whether to compel a party to arbitration, the court determines (1) whether the arbitration agreement is valid and (2) if the arbitration agreement "encompasses the dispute at issue." *Laster v. T-Mobile, USA, Inc.*, 407 F.Supp.2d 1181, 1186 (S.D. Cal. 2005). According to the Federal Arbitration Act ("FAA"), a court must use state contract law to determine if an arbitration agreement is valid and enforceable. *Lucas v. Gund, Inc.*, 450 F.Supp.2d 1125, 1130 (C.D. Cal. 2006). The FAA permits the nullification of an arbitration agreement on "such grounds as exist at law or in equity for the revocation of any contract," which "allows a party to raise general contract law defenses to avoid enforcement of an arbitration agreement." *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal.App.3d 632, 640 (Cal. Ct. App. 1986). Additionally, the FAA does not apply unless and until "the arbitration clause in question is determined to part of the contract." *Id*.   While arbitration is often favored, when doubt exists and the issue of contract interpretation

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

arises, the court should resolve in favor of preserving the constitutional right to a jury trial. *Id.* at 643 (*citing Titan Group, Inc. v. Sonoma Valley County Sanitation Dist.*, 164 Cal.App.3d 1122, 1127-28 (Cal. Ct. App. 1985).

Based on California contract law, an agreement is unenforceable when it is "both procedurally and substantively unconscionable." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002). To determine the existence of procedural unconscionability, the court considers "the equilibrium of bargaining power between the parties and the extent to which the contract clearly discloses its terms." *Id.* To determine substantive unconscionability, the court considers if the terms of the agreement are "unduly harsh or oppressive." *Id.* Procedural and substantive unconscionability do not need to be present in equal amounts. *Lucas*, 450 F.Supp.2d at 1130. Rather, the two are evaluated based "on a 'sliding scale,' which means if more evidence exists for procedural unconscionability then less evidence is needed for substantive unconscionability to determine the agreement is unenforceable." *Id.*

Therefore, for the arbitration agreement to apply, the agreement must be part of the contract in question and be valid and enforceable under California contract law.

## V.   ARGUMENT

First, Coinbase inaccurately states that the arbitration clause applies to Alfia's claims. The arbitration clause exists in a wholly separate contract and is not integrated into the Privacy Policy. Because the arbitration clause does not exist in the

10

Privacy Policy, it does not apply to Alfia's claims, and Alfia cannot be forced to arbitrate claims he did not agree to arbitrate.

Even if the user agreement controls, the 2017 User Agreement should control over the 2019 User Agreement because Alfia never assented to the 2019 User Agreement. However, under either User Agreement, the Court should determine questions of arbitrability.

Finally, not only are both arbitration clauses under either agreement invalid and unenforceable, but neither clause applies to the specific issues in this case. As a result, the arbitration clause does not control, and the case should continue in this Court.

**A.    The Arbitration Clause Does Not Apply to Alfia's Claims.**

Under both California and federal law, arbitration is a matter of consent. *Vandenberg v. Superior Court*, 21 Cal.4th 815, 835 (Cal. 1999) (emphasizing the "voluntary" and "contractual" nature of private arbitration); *also, Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741 (9th Cir. 2014). While arbitration is a mechanism to resolve disputes, arbitration is only used to resolve the disputes "that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 297 (2010). "Arbitration is recognized as a matter of contract, and a party cannot be forced to arbitrate something in the absence of an

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

agreement to do so." *Chan*, 178 Cal.App.3d at 640.

Alfia's claims stem from Coinbase's breach and violation of its Privacy Policy, so the Privacy Policy, ***not*** the User Agreement, governs the instant case. *See supra* at 7-8. However, the Privacy Policy does not contain an arbitration clause. Additionally, the Privacy Policy does not incorporate by reference the User Agreement. Coinbase emphasizes in its Moving Papers that the User Agreement "incorporates by reference" the Privacy Policy, but the inverse is not true.[8]

Under California law, an agreement does not need to "expressly provide for arbitration," and it may incorporate by reference a secondary document which includes the arbitration clause. *Baker v. Osborne Dev. Corp.*, 159 Cal.App.4th 884, 895 (Cal. Ct. App. 2008). However, for the terms of the secondary document to be incorporated by reference, the document at issue must clearly and unequivocally reference the document it incorporates. *Chan, supra,* 178 Cal.App.3d at 641. Therefore, a court only incorporates by reference the secondary document when the agreement at issue incorporates the secondary document. *Id* at 632; *also, King v. Larsen Realty, Inc.*, 121 Cal.App.3d 349 (Cal. Ct. App. 1981) (where the Court incorporated by reference the bylaws that included an arbitration agreement, to the signed agreement that specifically incorporated the bylaws). In this case, the

---

[8] *See* MP, p. 14 ¶¶26-27, p. 17 ¶¶1-2

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

agreement at issue, the Privacy Policy, does not incorporate by reference the User Agreement or the arbitration agreement, so the arbitration agreement does not apply to the Privacy Policy.

Because Alfia's claims arise from Coinbase's violation of its Privacy Policy and the Privacy Policy does not include an arbitration agreement, the arbitration agreement does not apply to Alfia's claims.

### B.      Alfia Did Not Agree to the 2019 User Agreement.

If the Court finds that the User Agreement governs the issues in this case, the 2017 User Agreement, not the 2019 User Agreement would control. A valid contract requires a "mutual manifestation of assent." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002). For a binding Internet contract to exist, the offeror must "provide reasonable notice of the proposed terms," and the offeree must "unambiguously manifest assent" to the terms. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1173 (9th Cir. 2014).

Websites utilize two mechanisms for obtaining assent from its users—"clickwrap" agreements and "browsewrap" agreements. *Id*. at 1175. A "clickwrap" agreement requires the user to click an "I agree" box when presented with the terms and conditions of use. *Id*. at 1175-76. A "browsewrap" agreement is when the website simply includes its terms and conditions of use generally "on the website via

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

13

a hyperlink at the bottom of the screen." *Id.* at 1176. "A browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly," but rather the party assents "simply by using the website." *Id*. A browsewrap agreement allows the user to continue to use the website without visiting the page with the agreement or even knowing that the page exists. *Id*. When "no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website," the validity of the browsewrap agreement depends on if the user had actual or constructive knowledge of the terms and conditions. *Id*. Without actual knowledge, a browsewrap agreements' validity "turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Id*. at 1177. Whether a user has inquiry notice depends "on the design and content of the website and the agreement's webpage." *Id*. If a link to a website's user agreement is "buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the browsewrap agreement." *Id.*; *see also, In re Zappos.com, Inc. Customer Data Sec. Breach Lit.*, 893 F.Supp.2d 1058, 1064 (D. Nev. 2012); *Van Tassell v. United Marketing Group, LLC*, 795 F.Supp.2d 770, 792-93 (N.D. Ill. 2011) (where the court refused to enforce an arbitration clause in a browsewrap agreement that was only noticeable after a "multi-step process" of clicking links).

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

14

When Alfia signed up for the Coinbase website, he was required to click an "I agree" box agreeing to the 2017 User Agreement and the Privacy Policy, which is a classic "clickwrap" agreement.[9] However, when Coinbase updated its User Agreement in 2019, Coinbase admits that Alfia agreed by simply using the website, and Alfia was never required to specifically agree to the updated 2019 User Agreement.[10]

Coinbase provided no evidence that Alfia had actual knowledge of the updated user agreement. Rather, Coinbase simply claimed it sent an email notice to Alfia, but Coinbase did not submit any evidence to the Court of the email or that Alfia was clearly notified of the changes in the user agreement.

Coinbase argues that *In re Facebook Biometric Information Privacy Litigation*, is instructive and supports Coinbase's only mechanism of informing users of the updated terms by email, but a further reading of *In re Facebook* and additional case law does not support Coinbase's argument at all. In *In re Facebook*, the court not only stated that Facebook provided users an email notification, but also, Facebook users received a "jewel notification" on their individual newsfeed regarding the changes. *In re Facebook Biometric Information Privacy Litigation*, 185 F.Supp.3d

---

[9] Ex. 1 and 2 to McPherson-Evans Decl., MP

[10] p. 8 fn. 2 in MP

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

1155, 1167 (N.D. Cal. 2016). The Court stated that "this individualized notice" was enough for notice and assent. *Id*. The additional notification Facebook provided supports the case law that assent is found when a website "contains an explicit textual notice that continued use will act as manifestation of the user's intent to be bound." *Nguyen*, 763 F.3d at 1177, *citing, Cairo, Inc. v. Crossmedia Servs., Inc.*, No. 04-04825, 2005 WL 756610, at *4-5 (N.D. Cal. Apr. 1, 2005) (enforcing terms of use where every page on the website had a textual notice that read "By continuing past this page and/or using this site, you agree to abide by the Terms of use for this site"); *also, Pollstar v. Gigmania, Ltd.*, 170 F.Supp.2d 974, 981 (E.D. Cal. 2000) (refusing to enforce browsewrap agreement where textual notice appeared in small gray print against a gray background).

The case law shows that courts enforce the knowledge and conspicuous requirement very specifically, and a simple email notification does not meet that standard. Coinbase never stated or submitted evidence that it provided users a banner or text notice on the website of the changes in the user agreement, and Coinbase merely sending an email does not provide proper notice. If Coinbase attempts to offer evidence in Reply to this Opposition on this issue (or any other), Plaintiff vehemently objects as the Court cannot entertain new evidence submitted on Reply. *Jay v. Mahaffey* 218 Cal.App.4th 1522, 1537-1538 (2013).

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

Finally, Coinbase argues that due to the "Amendment" clause in the 2017 User Agreement, Alfia was put on notice of potential modifications to the agreement.[11] While Coinbase cites case law supporting this argument, the case law fails to address a specific provision in Coinbase's Amendment clause. The clause states in relevant part "If the revised Agreement includes a material change, we will endeavor to provide you advanced notice via our website and/or email before the material change becomes effective."[12] A material contract change occurs when the change alters "the meaning or legal effect of the contract that changes "the rights, interests, or obligations of the parties to the writing." *Hill v. Morton, Inc. v. Coughlan*, 214 Cal.App.2d 545, 549 (Cal. Ct. App. 1963). Coinbase's change to its arbitration clause from the 2017 to the 2019 agreement was a material change. In the 2017 User Agreement, Coinbase did not include a delegation clause, but in the 2019 User Agreement, Coinbase included such a clause.[13] The delegation clause was a material change because it altered the rights, interests, and obligations of the user if a dispute occurred. Therefore, because Coinbase's Amendment clause provided a specific mechanism for notifications to users if a material change existed in the amended

---

[11] p. 9 of MP

[12] Ex. 3 to McPherson-Evans Decl., Section 8.5, MP

[13] Ex. 3 to McPherson-Evans Decl., Section 7.2, and Ex. 5 to McPherson-Evans Decl., Section 8.3

17

agreement, Coinbase was not released of the requirements it created for itself to notify users—"via our website and/or email"—of the material change.

Because Coinbase failed to provide proper notice or obtain Alfia's assent to the 2019 User Agreement, the 2017 User Agreement controls.

### C.     The Court, Not an Arbitrator, Should Determine Questions of Arbitrability.

Courts defer questions of arbitrability to an arbitrator only when "clear and unmistakable evidence" exists that the parties intended to delegate the determination of these issues. *Aanderud v. Superior Ct.*, 13 Cal.App.5th 880, 892 (Cal. Ct. App. 2017). The "clear and unmistakable" standard is a "heightened standard of proof." *Id*. Two prerequisites exist for a court to enforce a delegation clause: (1) the language must meet the "clear and unmistakable" standard; and (2) state contract defenses— like fraud, duress, and unconscionability—do not revoke the delegation. *Id*.

Under the 2017 User Agreement, which as stated above controls, Coinbase did not include a delegation clause. The arbitration clause incorporated the AAA rules, but those rules do not delegate the enforceability of an arbitration clause to the arbitrator.  Therefore, under the 2017 User Agreement, the Court should determine the questions of arbitrability.

Likewise, under the 2019 User Agreement, the Court should still determine the questions of arbitrability. The delegation clause in the 2019 User Agreement is not

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

clear and unmistakable. As stated above, a conflict exists regarding the User Agreement and the Privacy Policy. The delegation clause clearly states it delegates disputes about the Arbitration Agreement, but the delegation clause never mentions or incorporates the Privacy Policy. Further, the Privacy Policy does not incorporate the delegation clause or the User Agreement at all. Because an issue exists regarding how the Privacy Policy incorporates the arbitration agreement, the delegation clause does not meet the clear and unmistakable standard.

Further, the delegation clause is unconscionable and unenforceable. An agreement is unconscionable when it is both procedurally and substantively unconscionable. *Circuit City Stores, Inc.*, *supra* 279 F.3d at 893. Procedural unconscionability considers the "oppression and surprise" of the parties. *Laster*, *supra* 407 F.Supp.2d at 1187. Due to the inequality in bargaining power between the parties in regards to the delegation clause, the delegation clause meets the oppression element. *Id*. Additionally, surprise is present because Coinbase suddenly changed its arbitration clause to include a delegation clause in its new agreement, of which Alfia did not have proper notice. *Id*.; *see supra* at p. 14-15. Therefore, the delegation clause is procedurally unconscionable.

The delegation clause is also substantively unconscionable because it is one-sided and overly harsh towards the users. The delegation clause solely benefits Coinbase by removing Alfia's ability to obtain judicial interpretation of the

19

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

delegation clause and ultimately the arbitration clause. While Coinbase benefits from the delegation clause by removing all possibility of a suit in court and a trial by jury, Alfia and the other users do not benefit from this delegation. Rather, Coinbase is the only benefiting party to the agreement.

Due to the procedural and substantive unconscionability of the delegation clause, it is unenforceable. Therefore, if the 2019 User Agreement controls, the Court should still determine the questions of arbitrability.

### D.   The Arbitration Clause is Unconscionable and Therefore is Unenforceable.

The arbitration clause as a whole is unenforceable because it is both procedurally and substantively unconscionable.

### i.   *Procedural Unconscionability*

Procedural unconscionability considers "the manner in which the contract was negotiated and the circumstances of the parties at the time." *Laster*, 407 F.Supp.2d at 1187. Procedural unconscionability contains two elements: oppression and surprise. *Id*. A contract meets the requirements of procedural unconscionability when it is "a contract of adhesion," which is a contract "drafted by the party of superior bargaining strength that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id* at 1188; *also, Ting v. AT&T*, 319 F.3d 1126, 1148-49 (9th Cir. 2003). The Coinbase arbitration clause forces arbitration on the user and

20

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

provides no other alternative if the user wants to sign-up on the Coinbase website, which, by definition, makes the arbitration clause a contract of adhesion and therefore procedurally unconscionable.

Additionally, the surprise element exists when the party seeking to enforce the terms fails "to call the arbitration clause to the attention" of the plaintiff.  *Baker v. Osborne Dev. Corp.*, 159 Cal.App.4th 884, 863 (Cal. Ct. App. 2008). Coinbase never claims, and cannot claim, that it called the arbitration clause to Alfia's attention or called the specific changes regarding the delegation clause to Alfia's attention. Therefore, the arbitration clause is procedurally unconscionable.

### ii. *Substantive Unconscionability*

The arbitration clause is also substantively unconscionable. A contract is substantively unconscionable when it creates an "overly harsh" or "one-sided" result. *Id* at 862. When "the lucre of the arbitration agreement flows one way," it is substantively unconscionable. *Id* at 864. Additionally, an arbitration clause that prohibits "arbitration of class-wide claims" further supports this one-sided nature. *Id*.; *citing, Ting*, 319 F.3d at 1149-50 (finding a provision that prohibited arbitration of class-wide claims unconscionable because it was "difficult to imagine AT&T bringing a class action against its own customers). Not only does the Coinbase's arbitration clause prohibit the arbitration of class-wide claims but also the arbitration clause benefits Coinbase because it is inconceivable Coinbase would need to institute

21

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

legal proceedings against its users, while being highly likely that a user would need to institute legal proceedings against Coinbase.

Because the arbitration clause is both procedurally and substantively unconscionable, the arbitration clause is unenforceable and therefore invalid.

### E.    None of the Arbitration Clauses Apply to this Case.

Not only must the arbitration clause be valid, but it also must apply to the specific issues in this case.  *Laster*, 407 F.Supp.2d at 1186. As discussed above, Alfia's claims stem from Coinbase's violation of its Privacy Policy. *See supra* at p. 7-8. The Privacy Policy does not include an arbitration clause, and the arbitration clause does not state it applies to the Privacy Policy. Additionally, as stated above, the Privacy Policy does not incorporate by reference the User Agreement, and the User Agreement's incorporation does not impose those terms on the Privacy Policy. Courts cannot force a party to arbitrate disputes he did not agree to arbitrate. *See supra* at p. 11. Therefore, even if the arbitration clause is valid, it does not apply to the disputed issues.

### F.    The Action Should Not be Stayed and Should Continue in this Court.

Because the arbitration clause is not enforceable and does not encompass the instant case, the Court should not stay the proceedings. Rather, the case should

22

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

continue in this Court and proceed through the litigation process.

## VI.    CONCLUSION

For the reasons set forth herein, Alfia respectively requests the Court deny Coinbase's Motion to Compel Arbitration, continue the proceedings in this Court, and for all other and further relief to which he is entitled.


Date: January 31, 2022                   McCATHERN LLP


By:    */s/ Evan Selik*_____
        EVAN SELIK
        CHRISTINE ZAOUK
        Attorneys for Plaintiff,
        ADAM ALFIA

McCATHERN LLP
523 West Sixth Street, Suite 830
Los Angeles, CA 90014
(213) 225-6150

23

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is at McCathern LLP, 523 West Sixth Street, Suite 830, Los Angeles, California 90014.

On January 31, 2022, I served the foregoing document described as: **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY OF THE CASE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on all parties and/or their attorney(s) of record to this action electronically as follows:

KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
ERIN E. MEYER - # 274244
emeyer@keker.com
JACQUIE P. ANDREANO - # 338354
jandreano@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188
Attorneys for Defendant
COINBASE GLOBAL, INC.

XX]   **BY INTERNET/ELECTRONIC MAIL** I caused to be transmitted a copy of the foregoing document(s) this date via internet/electronic mail for service on all parties in this case via their e-mail addresses due to the Coronavirus (Covid-19) pandemic.  No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

**State**          I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed on January 31, 2022, at Los Angeles, California.


Krishna Anderson _____          /s/Krishna Anderson _____
                                          (Signature)