UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM ALFIA,<br><br>    Plaintiff,<br><br>v.<br><br>COINBASE GLOBAL, INC.,<br><br>    Defendant. | Case No. 21-cv-08689-HSG<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 18 |

Pending before the Court is Defendant Coinbase Global, Inc.'s motion to compel arbitration, briefing for which is complete. *See* Dkt. Nos. 18 ("Mot."), 22 ("Opp."), 23 ("Reply").[1] For the reasons detailed below, the Court **GRANTS** the motion.

I. **BACKGROUND**

Plaintiff alleges in this proposed class action that Defendant failed to properly secure his Coinbase account. *See generally* Dkt. No. 1 ("Compl."). Plaintiff alleges that an unauthorized purchase of $50,000 in cryptocurrency was made from his Coinbase account and an equivalent amount of money was deducted from his personal banking account without his knowledge or approval. *Id.* ¶¶ 12-13. Plaintiff asserts that because of Defendant's conduct, he has suffered significant economic loss, worry, and stress. *Id.* ¶¶ 26, 30, 35, 37. Plaintiff alleges multiple causes of action, including claims for breach of contract for violating Coinbase's Privacy Policy, negligently securing Plaintiff's private information and accounts, and misrepresenting the security and confidentiality of Plaintiff's information. *Id.* ¶¶ 22-37.

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, sets forth a policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (noting federal policy favoring arbitration); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (same). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. This federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id.*

When a party moves to compel arbitration, the court must determine (1) "whether a valid arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The agreement may also delegate gateway issues to an arbitrator, in which case the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In either instance, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citing 9 U.S.C. § 2).

## III. DISCUSSION

### A. The parties formed a valid arbitration agreement.

The party seeking to compel arbitration bears the burden of proving the existence of the agreement by a preponderance of the evidence. *See Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). In determining whether an agreement was formed, the Court applies "general state-law principles of contract interpretation," without a presumption in favor of

2

arbitrability.[2] *See Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (quotation omitted). The Ninth Circuit has recognized that internet-based commerce "has not fundamentally changed the principles of contract." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). One of those principles is that, in order for a contract to be formed, there must be mutual manifestation of assent. *Id.* Courts generally consider online contracts as one of two kinds: (1) "clickwrap" agreements where a user is presented with the terms and must click on a box to indicate that they agree before they may continue, which courts generally enforce; or (2) "browsewrap" agreements where the website's terms are provided to users via a hyperlink at the bottom of a webpage and a user's assent to the terms is assumed by their continued use of the website, which courts often view with skepticism. *See id.* at 1175–77.

Defendant explains that to create his Coinbase account, Plaintiff had to click a "check box" next to the language "I certify that I am 18 years of age or older, and I agree to the User Agreement and Privacy Policy," with both agreements accessible via hyperlink.[3] Mot. at 2-3, 4; *see* Dkt. No. 18-1 Decl. of Carter McPherson-Evans ("McPherson-Evans Decl.") ¶ 9, Ex. 2. Defendant asserts that Plaintiff assented to the hyperlinked User Agreement ("2017 User Agreement") in creating a Coinbase account on December 18, 2017. Mot. at 4.

The 2017 User Agreement included the following arbitration provision:

> If you have a dispute with Coinbase, we will attempt to resolve any such disputes through our support team. **If we cannot resolve the dispute through our support team, you and we agree that any dispute arising under this Agreement shall be finally settled in binding arbitration, on an individual basis, in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes (accessible at https://www.adr.org/sites/default/files/Consumer%20Rules.pdf) and you and Coinbase hereby expressly waive trial by jury and right to participate in a class action lawsuit or class-wide arbitration. . .**

---

[2] Here, the 2017 User Agreement contains a California choice-of-law provision. McPherson-Evans Decl., Ex. 3 § 8.10.

[3] According to Defendant, the terms "User Agreement" and "Privacy Policy" became underlined "when hovered over by a cursor," indicating they were hyperlinked. McPherson-Evans Decl. ¶ 9 and Ex. 2.

McPherson-Evans Decl., Ex. 3 § 7.2 (emphasis indicated in original).[4]

Plaintiff's assent was similar to a "clickwrap" agreement—he clicked a box stating that he agreed to the User Agreement, which was hyperlinked for easy accessibility. *See* Mot. at 4; McPherson-Evans Decl. ¶ 9, Ex. 2. He had clear notice of the terms of the 2017 User Agreement and took physical action to manifest his assent. Plaintiff does not contest that he agreed to the 2017 User Agreement at the time he created a Coinbase account, *see* Opp. at 8, and the Court finds that there was a mutual manifestation of assent to the 2017 User Agreement.[5] Therefore, the Court concludes that the parties entered into a binding arbitration agreement.

### B. The arbitration agreement covers this dispute.

The second question for the Court is whether the arbitration agreement encompasses the dispute at issue. *Lifescan, Inc.*, 363 F.3d at 1012.[6]

Here, the scope of the arbitration provision is broad—it includes any disputes arising under the 2017 User Agreement. McPherson-Evans Decl., Ex. 3 § 7.2. ("[Y]ou and we agree that any dispute arising under this Agreement shall be finally settled in binding arbitration. . ."). As the Ninth Circuit has held, a claim "arises under" an agreement when it "relat[es] to the interpretation and performance of the contract itself." *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (citation omitted). The contract here concerns the provision of Coinbase services through a Coinbase account. *See generally* McPherson-Evans Decl., Ex. 3. Plaintiff's claims relate to Defendant's provision of Coinbase services through his Coinbase account, and the arbitration agreement therefore encompasses the dispute.

---

[4] Coinbase submitted the 2017 User Agreement as Exhibit 3 in text-only format. McPherson-Evans Decl. ¶ 14. Double asterisks indicate that the text appeared in bold font when viewed online. *Id.*; *see e.g.*, Ex. 3 § 7.2.

[5] Since Plaintiff assented to the 2017 User Agreement that included a valid arbitration provision, the Court does not need to reach whether Plaintiff assented to the 2019 User Agreement. *See* Mot. at 4-5, 7-15.

[6] In the context of consumer contracts involving at least one unsophisticated party, the Court is not persuaded that incorporating the American Arbitration Association rules amounts to a clear and unmistakable delegation of arbitrability questions to the arbitrator. *See Eiess v. USAA Federal Savings Bank*, 404 F.Supp.3d 1240, 1252-54 (N.D. Cal. 2019) (noting that a majority of district courts in the Ninth Circuit have so found).

Plaintiff argues that the arbitration provision does not apply to privacy-related claims because the 2017 User Agreement and the Privacy Policy are separate agreements. Opp. at 8. Plaintiff contends that since the Privacy Policy does not have an arbitration provision of its own, he cannot be forced to arbitrate. Opp. at 10-11.

However, the 2017 User Agreement incorporates the Privacy Policy by reference. Under California Law, "incorporation by reference requires: (1) the reference to the incorporated writing must be clear and unequivocal, (2) the reference must be called to the attention of the other party, and (3) the terms of the incorporated writing must be known or easily available to the parties." *American Metal & Iron, Inc. v. American Employers Group, Inc.*, 2007 WL 972887, *2 (N.D. Cal. March 29, 2007); *see also Poublon v. C.H. Robinson Company*, 846 F.3d 1251, 1269 (9th Cir. 2017). In this case, the 2017 User Agreement clearly references the Privacy Policy, and the Privacy Policy was easily accessible to any user signing up for Coinbase's services via a hyperlink on the account creation page. *See* McPherson-Evans Decl., Ex. 3 at § 8.4 ("This Agreement, the Privacy Policy, E-Sign Consent, and Appendices incorporated by reference herein comprise the entire understanding and agreement between you and Coinbase. . ."). Plaintiff notes that the Privacy Policy does not mention the User Agreement, *see* Opp. at 12-13, but reciprocal incorporation in both documents is not required for there to be incorporation by reference. Plaintiff admits his claims relate to the Privacy Policy, which is part of the "entire agreement" formed by the parties, further reinforcing the conclusion that the arbitration agreement encompasses the dispute at issue.

**C.     The arbitration provision is not unconscionable and is therefore enforceable.**

Under California law, an agreement is enforceable unless it is both procedurally and substantively unconscionable. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280-81 (9th Cir. 2006). Procedural and substantive unconscionability need not be present in equal amounts. *Id.* The two are evaluated on a "sliding scale," meaning that a stronger showing of procedural unconscionability means that less evidence of substantive unconscionability is needed to establish overall unconscionability, and vice versa. *Id.*

To determine whether a contract of adhesion is oppressive and therefore procedurally

unconscionable, California courts consider several factors, including: (1) the relative bargaining power and sophistication of the parties, (2) the complaining parties' access to reasonable market alternatives, and (3) the degree to which an offending provision of a contract is "buried in a lengthy . . . agreement." *Shierkatz Rllp v. Square, Inc.*, 2015 WL 9258082, *9 (N.D. Cal. December 17, 2015); *see also Nagrampa*, 469 F.3d at 1281-84. California courts "recognize that showing a contract is one of adhesion does not always establish procedural unconscionability." *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348 n.9 (2015); *see also Nagrampa*, 469 F.3d at 1281.

Considering these factors, the Court finds a minimal degree of procedural unconscionability arising from the adhesive nature of the 2017 User Agreement. While the relative bargaining power between the parties favors Defendant and the 2017 User Agreement was presented on a take-it-or-leave-it basis, nothing in the record suggests that Coinbase was Plaintiff's only option for cryptocurrency services. And while Plaintiff argues that Coinbase never called the arbitration clause to his attention, *see* Opp. at 21, the arbitration provision in the 2017 User Agreement is clearly labeled "Arbitration; Waiver of Class Action" in bold print. *See* McPherson-Evans Decl., Ex. 3 § 7.2 (emphasis in original). The terms of the arbitration provision, unlike the majority of the contract, are also in bold font. *Id.*; *see also* McPherson-Evans Decl. ¶ 14.

"[A]n arbitration provision is substantively unconscionable if it is 'overly harsh' or generates 'one-sided results.'" *Nagrampa*, 469 F.3d at 1280-81 (quoting *Armendariz v. Foundation Health Psychcare Svcs. Inc.*, 24 Cal.4th 83, 114 (2000)); *see also Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012). However, "[a] contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience." *Pinnacle*, 55 Cal. 4th at 246 (internal quotation marks omitted).

Plaintiff contends that the arbitration provision is substantively unconscionable because it prohibits class-wide claims and provides relatively greater benefit to Coinbase. *See* Opp. at 21-22. The Court disagrees. The Supreme Court has affirmed the enforceability of class-action waivers.

6

*See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *see also Carter v. Rent-A-Center, Inc.*, 718 F.Appx. 502, 504 (9th Cir. 2017) (interpreting "*Concepcion* as foreclosing any argument that a class action waiver, by itself, is unconscionable under state law or that an arbitration agreement is unconscionable solely because it contains a class action waiver"). And the provision binds both parties to arbitrate designated claims. The Court finds that the arbitration provision is not substantively unconscionable.

Accordingly, the arbitration provision is not unconscionable and is therefore enforceable.

## IV.   CONCLUSION

The Court **GRANTS** the motion to compel arbitration. This action is **STAYED** pending resolution of the arbitration. The parties are directed to file a joint status report regarding the status of the arbitration proceeding 120 days from the date of this order and every 120 days thereafter unless otherwise ordered. The parties are also directed to jointly notify the Court within 48 hours of the conclusion of the arbitration proceeding.

**IT IS SO ORDERED.**

Dated:   7/22/2022

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge